## ROUSE v. HOPKINS, et al.

Circuit Court, Dade County.

August 8, 1952.

Ruff & Ready, Miami, for petitioner.

Hoffman, Kemper & Johnson, Miami, for respondents.

J. N. MORRIS, Circuit Judge.

*August 7, 1952:* On June 7, 1950 a final decree of divorce was entered in the circuit court in Dade County in which John Luke Rouse was plaintiff and Martha Welsh Rouse was defendant. In the decree the custody of two minor children was awarded to the father, with visitorial rights reserved to the mother.

Meanwhile the mother became the wife of James Hopkins and on May 7, 1951 Martha Welsh Hopkins filed in the circuit court a petition for a modification of the decree so far as the custody of the children was involved, asking that such custody be awarded to her.

On May 9, 1951 the chancellor in the divorce suit, pursuant to the provisions of section 9, chapter 27000, Acts of 1951,[1] transferred the petition by order to the juvenile and domestic relations court in Dade County.

---

[1] *Transfer of causes from other courts.*—Whenever in any cause pending in any other court in such county involving matters within the jurisdiction of the juvenile and domestic relations court, it may appear in the furtherance of justice for such cause to be transferred and more appropriately considered and disposed of by the said juvenile and domestic relations court, the judge of said court in which said cause is pending, on his own motion, or upon the motion of any party to the cause, including any prosecuting officer, or officer or employee of any other court, may summarily transfer said cause by appropriate written order to the juvenile and domestic relations court to be dealt with by said court, under the provisions of this Act, in keeping with said order of transfer and the procedure of such juvenile and domestic relations court, which court shall thereafter hear and determine said cause as though the same had been originally initiated in said juvenile and domestic relations court. * * *

On November 2, 1951 the juvenile court found the father to be a fit person to have custody of the children and, as of that time, the mother not be a fit person to have their custody, but the court provided that the mother should have the right, not earlier than six months thereafter, to apply anew for the care, custody and control of the children.

On May 23, 1952 the juvenile court entered an order granting a petition for the transfer of custody from the father to the mother, and in this order the court found that the mother was a fit and proper person to have the care and custody of the children. The court did not find that the father had not properly cared for the children or that he was not a fit and proper person to have such care and custody.[1]

---

[1] Order of WALTER H. BECKHAM, Judge, Juvenile and Domestic Relations Court, Dade County, November 2, 1951:

This cause coming on to be heard on the petition of Martha Welsh Hopkins, mother of Nancy Rouse, aged 9, and Virginia Rouse, aged 5, asking for the custody thereof with reasonable support for them from the father, custody now being with the father subject to rights of reasonable visitation by the mother, the petitioner alleging the children are lacking proper parental care on the part of the father; and further upon the oral motion of the attorney for the father attacking the jurisdiction of this court and the constitutionality of its establishment, upon which motion the court has reserved ruling; and both the mother and the father being before the court, each represented by counsel, said children having been before the court and by consent of counsel having been privately interviewed by the court, and the court having received and heard testimony and evidence, under oath, including a report of an assistant probation officer of this court who visited the homes of each parent and interviewed each parent, and the court having heard the argument of counsel and being otherwise advised in the premises, finds as follows:

That the father and mother of the children in contemplation of a divorce entered into a so-called written separation agreement May 2, 1950 under the terms of which in addition to certain financial agreements the petitioner, the mother, agreed that the custody of the children be given to the father subject to certain rights of reasonable visitation on her part. That thereafter a bill for divorce was duly filed by the father against the mother in the circuit court of this county alleging cruel treatment, including her alleged admission of being in love with another man while still married to the father. That the record of the divorce proceedings indicates that the mother failed to substantially contest or deny the allegations of the divorce bill, but through her attorney co-operated in filing such pleadings as would hasten the entry of the decree in favor of the husband, which decree upon being entered included the previous agreement between the parties as to the custody of the children remaining with the father, subject to certain rights of visitation on the part of the mother as recited in said agreement attached to the record in the divorce case.

That the mother was shortly thereafter remarried to one James Hopkins, a man with whom she was alleged to have been in love and had certain contacts with prior to her divorce, and who was also divorced, having been previously divorced by his wife and under court order to support certain minor children of the previous marriage. That some months after such remarriage the mother filed a petition in the original divorce case on May 7, 1951 seeking modification of the final divorce decree so as to award the custody of the children to her instead of the father and to award her reasonable support for the children from the father, the original divorce cause being entitled Rouse v. Rouse, No. 132777, Division F.

That shortly thereafter the circuit court on its own motion, as authorized by the law creating the juvenile and domestic relations court in Dade County, transferred the jurisdiction as to the care, custody and support of the minor children to this court in an order dated May 9, 1951, which order directed the clerk of the circuit court to transfer the file in the cause to the clerk of this court. That thereafter the mother on September 27, 1951, filed a petition in this court alleging said children to be dependent children and lacking proper parental care on the part of the father and asking that their custody together with support for them from the father be awarded to her, setting up that she now having remarried was able to provide a proper home for them.

That from the record and the considerable testimony and evidence offered by both parties, including the testimony of an assistant probation officer of this court who visited the respective homes of each parent, no substantial evidence has been offered showing the father to be an unfit parent, but that on the contrary the father is an educated

From this last order of the juvenile court the father, petitioner herein, filed an appeal within 10 days and, being advised that an appeal would not lie, filed a petition for a writ of certiorari raising the following questions: (1) whether the hearings in the juvenile court were improper and invalid as violative of petitioner's constitutional rights, and (2) whether the provisions of the juvenile court order of May 23, 1952 are in accord with law and justice. The petitioner attaches a copy of his appeal to the petition for writ of certiorari and asks that it be made a part thereof.

In his assignments of error petitioner contends that the juvenile court had no right to change its order of custody, taking the children from the father and giving them to the mother, without showing changed circumstances. He contends that the juvenile court

college professor with high moral, intellectual and ethical standards, and apparently of the highest reputation and character, including a reputation for general sobriety and regular church and Sunday school attendance. That considerable evidence has been offered showing the mother to have been guilty of indiscretions in her personal behavior, to be liberal in her ideas as to partaking intoxicants, to be only an infrequent attendant at any religious service, and apparently not as interested in high intellectual and moral standards as the father of the children, who have their custody. That her present husband with whom she is now living and with whom presumably the children would live if awarded to the mother, is also divorced and under court order to provide support for his children by a previous marriage, and while pursuing the honorable profession of carpenter and contractor, is shown to have only a limited literary education, rather free in the drinking of intoxicants and of an entirely different educational and social background from that of the father of the children.

That the physical homes of each parent are apparently adequate and proper for the care of the children and that both parents in their respective ways seem to love the children and are anxious to provide proper proper care for them. The difference in the intellectual, social and religious standards of the homes, however, and the difference in the personal behavior of the parents, as indicated by the record in this cause, inclines the court to the belief that the general welfare of the children at this time will be best served by leaving them under the major custody, care, control and influence of the father, subject to certain conditions hereinafter recited, and with the right of the mother to visit them, also under reasonable conditions as hereinafter recited.

The court finds that the father of the children, while serving as a full time teacher and professor at a local university, is endeavoring to perform all services for the children, including supervision, laundry, preparation of food, housekeeping, care and selection of clothing and all other details

as to the living conditions and rearing of the children, and that although the father is apparently undertaking to do the very best he can with his limited salary and multitude of duties, being a man and the children being little girls he has been unable in his limited way as a man to provide for the girls all adequate care and supervision, which the court believes only some proper woman might be able to do, which female supervision is usually supplied by a mother in a home, but which in the case at bar, the court feels the mother under the record disclosed is not the proper person under present conditions to furnish or supply, although the court feels that eventually she may be able, at a later period, to establish herself as a proper person to again apply for the custody and for the performing of such services.

It is therefore ordered that the petition of the mother for the custody of the children and for the other relief prayed for in the petition be, and the same is, denied, and the children are ordered left in the custody and primary control of the father, as originally directed by the divorce decree of the circuit court, subject, however, to the following:

The home of the father is placed under the supervision of this court to be visited at intervals by an assistant probation officer to assist the father during the next 30 days hereafter to make some adequate provision for some proper female person to help in the supervision and care of the children, including the proper preparation of food, the choosing and arranging of clothing, and the teaching of habits of personal hygiene, including the proper laundering of the children's clothing, which person the father is hereby directed to provide within 30 days, or submit some alternate plan to meet such general purpose to be later approved by this court during such period.

Hereafter the previous order and agreement of the parties allowing the mother reasonable visitation, which has been carried out by the mother being allowed to see the children one day each week, is hereby modified so as to permit the mother to see the children only once every two weeks until

erred when on November 2, 1951 it denied his motion for a dismissal of the mother's petition on the ground that the statute authorizing the transfer of the circuit court suit to the juvenile court is unconstitutional. He further contends that the juvenile court has no jurisdiction to determine controversies involving divorce.

Respondents filed motions to quash the appeal and to dismiss the petition for a writ of certiorari, arguing (1) that because petitioner did not appeal from the chancellor's order transferring the question of custody to the juvenile court within 60 days he cannot now question the order, (2) that because petitioner did not question the authority of the juvenile court to award custody to him within 60 days he is at this time too late in questioning the chancellor's right to transfer the cause to

the further order of this court, it appearing to the court from the record herein disclosed that too frequent visits based on divided custody tend to keep the children emotionally upset and unstable in the custody of the father. The time, place and method of such visitation as between said parents is left to their mutual agreement as a matter of mutual convenience, but in the event of their failure and inability to agree on details concerning the same, the parents are directed to consult with the woman assistant probation officer assigned to supervise the home, and if thereafter no definite or satisfactory mutual agreement can be reached, either party may apply to this court for a further order fixing definite details and provisions of the same. The mother is also directed to refrain from entering the home of the father for any purpose whatsoever, but any transactions with reference to visiting the children shall be conducted on the outside premises of the home or as otherwise mutually agreed between the parents. Both parents are directed to refrain from in any manner encouraging either of the children in any way to become prejudiced, disloyal or critical of the other parent, but to allow the children in good faith to love and think well of both parents. Should special circumstances arise reasonably justifying a different manner and time of visitation, unless the parents mutually agree on some different plan the matter may be cleared through the woman assistant probation officer supervising the home, or otherwise the court applied to for some proper order, after hearing between the parties, modifying this order.

It is not the purpose of this order to definitely, forever, or finally deny the mother custody of the children in the future, and within a reasonable length of time hereafter and under substantially changed or improved conditions surrounding the mother, she is granted the right to again apply for custody with proper notice and opportunity to the father to be heard thereon.

The oral motion of the attorney for the father on which the court reserved ruling is hereby overruled and denied.

Each parent is directed to refrain from discussing this proceeding and the order of this court in detail with the children other than acquainting them with the fact that they are to continue to live with the father until further order of this court.

The court will not consider an application for a change in this order as being made within a reasonable time until after a lapse of a period of at least six months hereafter, except for showing most unusual and unforeseen circumstances.

Let the file of the circuit court proceeding referred to herein be returned by the clerk of this court to the clerk of the circuit court with a true copy of this order placed in said file as a matter of information.

The court retains further jurisdiction of this cause and the welfare of said children for the purpose of rendering any additional or subsequent orders deemed necessary for the protection of their welfare.

### Order of May 23, 1952:

This cause coming on to be heard on the petition of Martha Welsh Hopkins, joined by her husband, James Hopkins, as filed in this court May 15, 1952, seeking the custody of Nancy and Virginia Rouse for and during the period beginning with the closing of their current school year and continuing throughout the summer and until such further order of this court, and the said petitioner, together with her attorney, and the respondent, the father of the children, together with his attorney, being before the court in person, and the court having received testimony and evidence under oath, and having heard argument of counsel, and being otherwise advised in the premises, finds as follows:

That on November 2, 1951, the cause having been transferred as to the custody, care and support of the children from the circuit court, and after holding a lengthy hearing on a previous petition of the mother for such custody, the court entered an order granting temporary custody at that time to the father, said order, however, reciting that it was not

the juvenile court or to question the right of the juvenile court to enter the order awarding custody to the mother, and (3) that the constitutionality of section 9, chapter 27000, Acts of 1951, authorizing the chancellor to transfer the cause to the juvenile court, is not properly raised.

Section 11 of article 5 of the state constitution vests in the circuit courts exclusive, original jurisdiction in all cases in equity and supervision and appellate jurisdiction of matters arising before county judges pertaining to their probate jurisdiction or to the estates and interests of minors—and of such other matters as the legislature may provide.

In 1951 the constitution was amended so as to provide that the legislature should have power to create and establish juvenile

the court's intention permanently to deprive the mother of custody and suggesting that the mother might again, after a period of approximately six months, make further application to this court for custody, the court retaining jurisdiction for the rendering of any additional or subsequent orders deemed necessary for the protection of the children's welfare.

That from the preponderance of the testimony and evidence presented herein, including the testimony of Virginia Graham, assistant probation officer of this court, who previously under order of this court was given supervision of the homes of the parents concerning the custody and care of the children, Martha Welsh Hopkins, joined by her husband James Hopkins, are fit and proper persons to have the custody of the children at this time, which finding is without any other finding that the home of the father is not also a fit and proper home for the children, in which the children have had good and proper care on the part of their father during the period the court has permitted him to have their custody, that for several months now the mother, together with her present husband, have been living a life of rectitude and sobriety, having joined a church which they attend regularly, in which they have participated actively, and that in addition the mother joined with her husband have developed a proper home with proper housing and surroundings for the care of the children, which home is a proper place at this time for the children to be in the custody of their mothers.

That should the children be allowed at this time to remain with the father it is his plan and purpose to take them out of the jurisdiction of this court on a long automobile trip to his former home in Pennsylvania, planning on such trip to have them visit various points of historical interest and meet certain friends and relatives which he deems good for their welfare, and to return them to Dade County shortly before the opening of the next school semester or on or about September 1, 1952.

That should custody be awarded to the mother as prayed in the petition, it is her plan to remain in the jurisdiction of the court and to provide the children with a proper vacation program, including opportunities to go to the beach, take part in other wholesome recreation and training and possibly attend a vacation Bible School conducted in connection with her church. That the petition filed by the mother for custody in no manner attacks or reflects upon the care and custody heretofore given by the father, nor has the father through his attorney or in the course of this hearing introduced or offered any substantial evidence in any manner attacking the moral character or fitness of the mother and her husband or making any showing as to the unfitness of the mother's home or her ability to care for the children properly should their custody be awarded to her as prayed.

That from the testimony and evidence offered, including the testimony of Virginia Graham, assistant probation officer of this court for many years, both parents apparently love the children and have tried the best they could to carry out previous orders of this court touching their care and custody, and that the father, as required by the court's previous order to have some female person in his home to assist him in the care of the children, has had his mother, the paternal grandmother of the children, in his home for the last several months, although his mother is quite an elderly person and suffers from certain physical handicaps.

That the welfare of the children at this time, considering their future, will be best served by granting the mother's petition for their custody, as prayed, she having stated that she desires no financial assistance from their father for their support during such time. That looking at the entire future of the children it is also for their future welfare and happiness that being little girls of tender age they spend a reasonable amount of time under the care and supervision of their own mother, considering the uncertainties of life and the possibility that before they reach maturity either parent may

courts in such county or counties or districts within the state as it might deem proper, and to define the power and jurisdiction of such courts and the officers thereof, and to vest in such courts exclusive, original jurisdiction of criminal cases where minors under any age specified by the legislature from time to time are accused, including the right to define any or all offenses committed by any such persons as acts of delinquency instead of crimes—or in such manner, for such time, and according to such methods as the legislature might prescribe and determine, without being limited thereby as to original jurisdiction of interests of minors as provided in section 11 of article 5.

In 1951 the legislature enacted chapter 27000 which created a juvenile and domestic relations court in counties having a population of 350,000 or more—thus applying only to Dade County—and in this Act the court was given different, broader, and in some instances, new powers.

Section 20 of article 3 of the constitution provides that the legislature shall not pass any special or local laws in any of a list of enumerated cases—including the regulation of the jurisdiction and duties of any class of officers except municipal officers, or the punishment of crimes and misdemeanors.

It may be doubted whether the legislature, having created a juvenile court, can then enact a law creating such a court in any one or more of the counties of the state having different jurisdiction from that granted under the general law. The question of the constitutionality of section 27000 is not, however, properly before the court.

---

be called upon to assume the completion of their care and rearing.

It is therefore ordered that the petitioner's prayer is granted and that the custody of the children is awarded temporarily to the mother for and during the period beginning with the close of their current school year and continuing throughout the summer months hereafter until further order of this court. Let the father accordingly arrange for said children in compliance herewith to be delivered to the custody of their mother together with their clothing, toys and personal belongings, which are to be kept in good condition by the mother, natural wear and tear excepted, for the possible return of the same and the children to the custody of the father, should the court later so order.

Let Virginia Graham, assistant probation officer of this court, cooperate with the parents in effecting an agreed and friendly transfer of the children, if necessary making the transfer herself, in keeping with the terms hereof. The father is permitted the same period and type of visitation while the children are in the mother's custody as was provided heretofore for the mother while they were in the father's custody. The mother is directed not to take the children out of Dade County or beyond the jurisdiction of this court without the further order of this court. Unless the parents agree as to the custody of the children shortly before the beginning of their next school semester, the father is granted permission to make application to this court for their future custody, at which time the court will again consider the future needs and welfare of the children as between the father and mother and their respective homes and plans for the children. Let the above named assistant probation officer continue to supervise custody of the children and the home of the mother.

This order is entered as a temporary order and the court retains jurisdiction for the entering of any future orders as may be needed from time to time for the future welfare and protection of the children. Let copies of this order be furnished both parties to the cause.

When the cause came on for hearing in the juvenile and domestic relations court petitioner objected to trial thereof in that court because the issues were equitable in nature, and, he contended, equity causes are cognizable only by the circuit court. He maintained that the statute purporting to confer jurisdiction of the cause on the juvenile court was unconstitutional, and that the circuit judge having assumed jurisdiction and having ruled thereon was without authority to divest himself and the court of further jurisdiction in the matter. The juvenile court overruled petitioner's objections and contentions in the order of that court dated November 21, 1951.

It must be noted that in the case at bar neither the question of dependency nor that of delinquency is involved—nor is there any threat of dependency or delinquency. Under chapter 26880, the general law, the juvenile court does not have jurisdiction of minor children except in cases of dependency or delinquency, or a threat thereof.

Under the provisions of chapter 27000, the local law, the juvenile and domestic relations court has authority—

Sec. 3. * * * concerning the enforcement of any decree or order of any other court involving alimony, support, legal separation, separate maintenance, or child custody, whenever any child or the parent thereof residing in such county is reasonably involved and threatened with becoming dependent upon the public for support because of non-compliance with such decree or order, being given concurrent jurisdiction with other courts for such purpose in keeping with procedure as herein provided, primarily to protect the welfare of any such child by appropriate orders, but not to grant divorce or decide interests in real estate.

* * * concerning the custody of any child present before the court or residing in the county, when not in conflict with the jurisdiction assumed by any other court in such county, and to change such custody when deemed for the welfare of such child.

It must therefore appear that the juvenile and domestic relations court did not have jurisdiction to enter its order of May 23, 1952. Such order is hereby set aside, and it is ordered that the two minor children involved be returned to the custody of the father.

*August 13, 1952:* This cause coming on to be heard on respondents' motion for order of supersedeas and it appearing that respondents are applying to the Supreme Court for a writ of certiorari to review this court's order of August 8, 1952 wherein the court set aside an order of the juvenile and domestic relations court for Dade County and ordered that the two above named minor children be returned to the custody of the petitioner, it is ordered that said order of August 8, 1952 be and the same hereby

is superseded and stayed until a ruling on respondents' petition for writ of certiorari is obtained from the Supreme Court, and it is further ordered that this order of supersedeas shall become effective only upon the respondents filing a good and sufficient bond herein with a surety company authorized to transact business in Florida, as surety, to be approved by the clerk of this court, payable to the Governor of Florida for the use of petitioner in the sum of $1,000, conditioned to pay all costs and damages and attorney's fees if the application for certiorari is denied by the Supreme Court or if the said order of August 8, 1952 is affirmed by the Supreme Court.